May it please the Court, Eric Lichtblau for appellant, and this is my colleague Jim Burns. Gentlemen. And with the Court's permission, I'd like to reserve two minutes of my time for rebuttal. You may do so. Just watch the clock. One man, without giving Carlos Castro any opportunity to discuss the evidence against him, transformed Mr. Castro's sentence of 15 years to life into a sentence of life without the possibility of parole. Now, while the repercussions for this case are profound for Mr. Castro, the issues are actually quite simple. This Court has had this case before and remanded to the district court with two simple issues. First, which officials actually make the decision to confine prisoners to administrative segregation in the Security Housing Unit? And second, whether Castro in fact received a meaningful opportunity to present his views to those individuals? Now, without answering either of these two questions, the district court granted summary judgment against Mr. Castro. Moreover, there were disputed issues of material fact as to both questions. And, in fact, there is no evidence in the record that Mr. Castro had a meaningful opportunity to present his views to the institutional gang investigator. Looking at the facts in the lightmost favor of Mr. Castro. Well, assuming just for the sake of argument that Mr. Ayala was indeed the critical decision-maker, what's your analysis of the question of whether there was an opportunity to present views by Mr. Castro? I think what the district court did was reverse the burden of proof. The district court found that Mr. Castro did not dispute that any meeting occurred. But, of course, there was no allegation and no evidence that a meeting generally occurred. The only evidence was that a particular meeting occurred. Mr. Ayala said in his declaration that he met with Mr. Castro concurrently with Mr. Gonzalez. And the defendants characterized this meeting as having occurred in the room next to Mr. Gonzalez's office. Castro specifically disputed that that meeting occurred. The district court acknowledged that he disputed that there was any meeting with Gonzalez. And, of course, if there's no meeting with Gonzalez, there can't possibly be a meeting with both Ayala and Gonzalez. And Castro specifically refuted that there was any meeting in the office next to Gonzalez's in the room next to Gonzalez's office. So when the district court said that this was carefully worded to apparently avoid saying that there was no meeting generally, again, that's shifting the burden of proof, because the burden is on defendants in a motion for summary judgment to prove that there was a meeting. And the only meeting they alleged to have taken place Castro specifically refuted. So the question's a fact, is your argument? It's a question of fact, exactly. Which would prevent summary judgment. Which would prevent summary judgment. So even if Ayala is the critical decision-maker, and, again, I think it's important to note there's no finding that he actually made the decision. This Court very clearly asked this question to be answered, which individuals actually make the decision to confine Castro to the security housing unit. And what the Court found was that Sergeant Ayala was the investigator. The Court never found that Sergeant Ayala had any authority to make the confinement decision. And the Court never found that Sergeant Ayala actually made the decision. And, in fact, the only evidence on this issue is Mr. Castro's uncontradicted declaration. Mr. Castro says that Sergeant Ayala had no authority to make the decision, that it was, in fact, Lieutenant Gonzalez who made the decision. So at a minimum, that's a disputed fact. But, in fact, that's the only evidence. Because Ayala never said he made the decision. He said he investigated. Ayala never said he had the authority to make the decision. Gonzalez never said Ayala had authority to make the decision or made the decision. And, in fact, all the evidence said that what Ayala did was assist in the process. So your position is that there's a question of fact with respect to both issues which would have undermined the summary judgment granted by the Court? Exactly, Your Honor. Well, why don't we hear from the other side and see what their response is to that? You have all of this time, but I think you've raised the issues pretty squarely. Sure. I'm happy to save the rest of my time for rebuttal. May it please the Court. Deputy Attorney General Kenneth Roost for Defendant Appellees. Why aren't there questions of fact with respect to both of these issues? Why weren't there very clear, controverted positions? I think the evidence is undisputed as to both of the findings that this Court asked the district court to make. To begin with, in the district court's three-page opinion, citing the same sentences of the same cases that this court cited to in its remand order, the district court found that the investigator who collects the evidence and prepares the gang validation package is the decision-maker. And then the lower court went on to find that in this instance, Castro's investigator was Mr. Ayala, Ayala who was there at every critical stage, every juncture of Castro's validation. To begin with, Ayala made the decision to pull Castro out of the general population and into administrative segregation because he was uncertain as to Castro's gang status. Ayala also issued the Form 114D that this court already found provided sufficient notice as to the charges against Castro. Ayala also performed the investigation, went through Castro's cell, collected the evidence that this court already found sufficient to validate Castro as an associate of the Mexican Mafia prison gang. Don't all of Ayala's, Mr. Ayala's declarations, though, say I assisted Mr. Gonzalez with Mr. Gonzalez, we did this, there's nothing that says that he unilaterally made a decision. It's always in conjunction with Mr. Gonzalez. The evidence points that Ayala stated he assisted in the preparation of the gang validation package, and indeed the signatures of both his supervisor, Gonzalez, and Ayala lie on every page of the gang validation package. But the actions of both parties here acknowledge that Ayala was the primary decision-maker  The Department of Corrections, when investigating the administrative grievance of Castro preceding this appeal, interviewed Ayala, not his supervisor, Gonzalez, about the due process and validation. And Castro himself, in preparing for a hearing, evaluating his validation, selected a witness, Ayala, not his supervisor, Gonzalez. He put forth written questions to Ayala concerning Ayala's interpretation of the evidence that Ayala collected. And attached to Castro's own complaint and his first declaration in this action are photocopied pages from this gang validation package, signed by both Gonzalez and Ayala, but written in the first person with statements like, I performed the investigation, I went through the cell, I collected this correspondence indicating, and in handwritten rejoinders attached to the complaint and declaration, Castro points to Ayala contending Ayala's interpretation of the evidence. But in Mr. Castro's submissions to the district court, he says Mr. Ayala is just an underling and that the decisions were made by Mr. Gonzalez. That's correct. He can never head on say he never had the chance to talk to Ayala. So instead, he attempts to diminish the authority of Ayala by calling him a mere underling of his supervisor. We do not contend that Ayala was the highest-ranking official at CDCR. But nevertheless, Castro then goes on to cite to Ayala's own declaration for the point that Ayala performed the investigation and assisted in preparation of the gang validation package. We do not contest that Ayala had these responsibilities. We assert it and feel clearly in this matter Ayala was the primary, the critical decision-maker in the segregation decision, and that he gave Castro an uncontested opportunity to be heard while the investigation was ongoing, while it could make a difference. And that supplies the meaningfulness to the due process that this Court asked the district court to find here. Mr. Castro says that Mr. Ayala did not, in fact, appear at the two hearings that Mr. Ayala says he appeared at or alludes that he appears at, and that they didn't have a meeting. So Mr. Castro says he did not have an opportunity to express his views, even to Mr. Ayala. What's the evidence that why isn't that a disputed issue? In Ayala's declaration, he first declares that during the investigation, he and Gonzales met with Castro to collect information about possible prison gang activity and to provide the opportunity to be heard. Two paragraphs later, Ayala also adds that he attended the two ICC meetings and He takes the position, but isn't that a disputed issue? Absolutely. It's directly disputed. But Ayala was the only one who would have been at those ICC meetings. No one contends that Gonzales was present there, and Castro directly contends Ayala's assertions that he was there. But Ayala, but Castro never contends that he never had the chance to talk with Ayala. In two paragraphs above, he said he met with Gonzales with Castro. And Castro very clearly, in both of his declarations before this appeal, said he never had the chance to talk with Gonzales. But he never very clearly states, I never had the chance to talk to Ayala. He hedges it. He attacks his opportunity to talk with Gonzales. My view of the record indicates that Castro continually denied meeting with Ayala, either in Gonzales' office or at any of the hearings. And furthermore, Ayala doesn't tell us that there are any other meetings occurred. Isn't that a direct confrontation in terms of disputed facts? On the contrary, actually. In the declarations, Ayala merely asserts that he met with Gonzales. And in rejoinder to that, Castro says, I never met with Gonzales. And he points to a location which was never in the declarations. That's not in the evidence. But isn't that up to a fact finder to determine? How can you do that? How can you make that kind of a conclusion on a summary judgment motion? It's the undisputed evidence in the declarations, which the district court found to be carefully worded. He never directly says, I never talked to Ayala. And that's all that has to be here for due process under Hewitt, an opportunity to be heard by the decision maker. Anything further? No. Thank you, counsel. Mr. Lichtblau? You might want to comment directly on that last exchange. Yes, Your Honor. I would like to do that. The point really is that Ayala never says generally, I met with Mr. Castro. He says specifically, I met with Mr. Castro with Mr. Gonzales present. He alleges one specific meeting. And Mr. Castro very clearly says that meeting didn't occur. I never met with Gonzales, and therefore, clearly, there couldn't have been a meeting with Gonzales and Ayala. And while Mr. Roost is correct that the declaration doesn't say that meeting occurred in the room next to his office, it was their pleading that said that. Their pleading said, their motion for summary judgment, citing to the same paragraph of the declaration, said that this meeting occurred in a room next to Lieutenant Gonzales' office. So when Mr. Castro wrote, I never met in any room next to this office, sorry, he never met with me in any room next to his office, nor did Sergeant Ayala. He was very clearly disputing this specific meeting. It was defendants who placed into the record, whether in the declaration or in their brief, that the meeting occurred in the office. So there is no meeting that allegedly occurred that he didn't dispute occurred. And so the only other point I'd like to add is, in addition to there being disputed issues of fact on who the critical decisionmaker is and on whether a meeting occurred with Gonzales or Ayala, and the district court conceived that he disputed that a meeting occurred with Lieutenant Gonzales. The Court never made a finding that the opportunity to present his views was meaningful. And this is the fundamental element of due process, as this Court recognized in its remand order citing Matthews v. Eldridge. So to simply say that a meeting occurred that he had a chance to present his views does not answer the question as to whether a meaningful opportunity occurred. And, in fact, there's no finding that that was meaningful, and there's no evidence that it was meaningful. And Castro's undisputed evidence is that he wasn't given a chance to talk about any of the evidence being used to validate. And I submit that it is not possible to have a meaningful opportunity to dispute the charges if you're not told anything more than, we believe you are periodically or regularly involved with somebody else who is periodically or regularly involved with somebody else who's a gang member. If that was told to anyone, there's no way to meaningfully dispute that. There's no way to, as the Court in Wolf v. McDaniel said, marshal the evidence against those charges. To be able to marshal evidence against the charges, you have to know what the basis for the charges is, at least something. In this case, there was a confidential memorandum, but he wasn't told that. If he had been told that, he could have said, oh, from the same person who was discredited by sworn testimony from prison officials in 1991, and perhaps that would have swayed I.G.I. Gonzalez. Or he could have been told that there was a postcard from Mr. Bracamonte, and he could have said, that's not the same Bracamonte you think it is. That's somebody who's been paroled. He wasn't given a chance to do that. That's undisputed, even notwithstanding Mr. Roos's arguments. And thus, it's impossible to get a meaningful opportunity, and he deserves a trial on the merits of that issue. Thank you, counsel. The clock has frozen at the time you originally had, but I think you've probably consumed it by now. But in any event, thank you, counsel. The case just argued will be submitted for decision, and we will hear argument in Oguin v. Lovelock Correctional Center. Thank you, Your Honor. You're welcome. We're having trouble with the clock. Okay.
judges: Hall, O'scannlain, Ikuta